A10A0645. COLLINS v. THE STATE.
(695 SE2d 343)

BARNES, Presiding Judge.

A jury convicted Steven Collins of burglary, entering an automobile with the intent to commit theft, and misdemeanor obstruction of a police officer, and he appeals. Collins contends the evidence at trial was insufficient to convict him of burglary, and the trial court erred in declining to give his jury charge on obstruction. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840-841 (1) (607 SE2d 565) (2005).

We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

"To warrant a conviction on circumstantial evidence, the proved facts need exclude only reasonable hypotheses — not bare possibilities that the crime could have been committed by someone else. And questions of reasonableness are generally decided by the jury." (Citation and punctuation omitted.) *Daugherty v. State*, 283 Ga. App. 664, 667 (1) (a) (642 SE2d 345) (2007).

1. Viewed in that light, the evidence at trial established that the victim was inside his house when a noise made him look out the window. He saw Collins in the bed of the victim's pickup truck unlocking the door after forcing open the back sliding window into the truck's cab, and yelled at him to stop. By the time the victim came outside, Collins was inside the truck. When the victim "hollered" at him, Collins ran off on foot. The victim got into his truck and caught up to Collins, who was by then carrying the victim's weed-eater, but Collins brandished the tool at the victim, then ran behind some houses into the woods. The victim flagged down a patrol car, which had already responded to another neighbor's 911 call about a suspicious person.

The police sergeant in the patrol car had responded to the call within sixty seconds, and first talked to two neighbors who had interacted with Collins. The first neighbor saw Collins hide a weed-eater under some bushes at an abandoned house next to hers and then leave. The neighbor testified she thought the weed-eater might be stolen so she retrieved it from the bushes and put it in her driveway. A few minutes later, after a second neighbor had come out of her house to greet her returning children, Collins returned and began looking for the weed-eater. He asked the first neighbor if she had seen it, and the neighbor pointed out the tool in her driveway, which Collins retrieved. Then he asked both neighbors first if they had any spare gasoline, then whether they wanted to buy the weed-eater, and the first neighbor told him, "No and you ripped the weed-eater off and give it back. I will call the cops." Collins began cussing at both neighbors and then ran off with the tool.

After the two neighbors told the sergeant what happened, he parked his car and began jogging in the direction they indicated Collins had just gone. As he ran, other neighbors told him they had seen a man running. Other police officers took over the chase, and as the sergeant returned to his car the victim drove up and described seeing someone break into his truck and run away. The officer who had taken up the pursuit, which he described as a "wild goose chase," began following neighbors' directions and finally saw Collins about five or ten yards away. The officer yelled to him several times, "Atlanta Police, stop," but Collins kept running. The officer even-

tually caught up with him and ordered him to the ground with his weapon drawn, and Collins complied.

One of the two neighbors identified Collins in the back of the police car and again at trial as the man who had left and then retrieved the weed-eater from the bushes near her house. The police then drove to the victim's house, and the victim identified Collins then and later at trial as the man who had broken into his truck. After an officer asked the victim if he was missing anything, the victim discovered a big hole in the wall of the storage room of his house and described his missing weed-eater, which was a particular brand with a special chain cutter attached instead of the usual string cutter. The victim then identified as his the weed-eater which the police retrieved near the area where Collins was arrested, which Collins had been carrying when the victim drove up to him on the street.

Collins was indicted for burglary by entering the victim's storage shed "without authority and with intent to commit a theft." He argues the evidence on this count was insufficient because the State presented no direct evidence he entered the shed, and no one saw him in or near it. Although witnesses saw him with the victim's weed-eater, no evidence disputed his explanation that he found it in a ditch beside the road while he was on his way to the store, he argues. But once the State showed that Collins possessed goods that were stolen in a burglary, an "unsatisfactory explanation" of that possession supports his burglary conviction. "Whether a defendant's explanation of possession is satisfactory is a question for the jury," and a guilty verdict "reflects the jury's dissatisfaction with defendant's explanation." (Citation omitted.) *Chambers v. State*, 288 Ga. App. 550, 551 (654 SE2d 451) (2007). In addition to establishing Collins' recent possession of the stolen tool, the State also presented evidence that the neighbors saw him hide it under the bushes, the victim saw him breaking into his truck, he retrieved the weed-eater from the neighbor's driveway and offered to sell it to her, and he discarded it as he ran from the police.

Collins also argues that the State failed to show that the weed-eater had been "recently" stolen, because no one testified about the length of time the item had been missing. The victim only realized it was gone after Collins was arrested and the police asked him if he was missing anything. But the victim also testified that when he looked around his property, he saw that the siding on his storage shed had been "peeled back," leaving a hole big enough for a person to enter, and found his tool missing. "'What constitutes recent possession is in all cases a jury question,'" *Hanson v. State*, 229 Ga. App. 205, 206 (1) (493 SE2d 605) (1997), and here, a jury could infer that the theft was recent because the thief tore a large,

14

obvious hole in the side of the attached shed which the homeowner saw immediately once he looked at the structure. See *Rivera v. State*, 293 Ga. App. 215 (666 SE2d 739) (2008) (evidence defendant possessed stolen items close to burglarized dwelling the day after burglary and tried to evade police was sufficient); *Martin v. State*, 254 Ga. App. 40, 41 (1) (561 SE2d 154) (2002) (evidence defendant pawned stolen items within hours of burglary, had been at burglary sites before, and gave police inconsistent statements sufficient).

Finally, Collins argues that the circumstantial evidence did not exclude every other reasonable hypothesis except guilt, and that it would be "illogical" for him to break into the shed, steal the weed-eater, hide it, then ask neighbors where it was when he returned to retrieve it. While such actions may be illogical, all of the witnesses testified that Collins was acting strangely, as if he were "deranged" or under the influence of an intoxicant. He was "agitated," and after his arrest threatened the two neighbors who called the police as if they were the ones who had stolen the weed-eater. In the police car he was screaming, yelling, kicking, and the sergeant described him as "very hyper, the type of activity of someone on crack cocaine or meth." In light of this evidence, an argument that Collins' alleged actions were not logical is consistent with a reasonable hypothesis of guilt. At any rate, "whether a defendant's explanation of possession is satisfactory [was] a question for the jury." *Davis v. State*, 275 Ga. App. 714, 716 (1) (621 SE2d 818) (2005).

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Collins guilty beyond a reasonable doubt of burglary. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Collins also argues that the trial court erred in declining to give his request to charge the jury that a required element of obstruction by fleeing is that the defendant received and disobeyed a lawful command to halt. He contends that he never heard the officer ordering him to halt because his hearing is impaired, and that the jury should have been instructed that it would have to find he fled after receiving the lawful command to halt.

As the State points out, during the charge conference the court proposed adding the following to the pattern charge on obstruction: "Whether or not the actions of the defendant did hinder or impede officers in carrying out their assigned duties is for the jury to decide." When asked if the additional charge was satisfactory, Collins replied, "Your honor, we like it better than the pattern, for sure." The court responded, "This goes in addition to the pattern," and Collins said, "Yes, we like that 'knowingly.' " The trial court gave the addition and the pattern charge. After it began deliberating, the jury

asked for a "more detailed description (exact legal wording) of obstruction." Collins again asked the court to give his request to charge, but the trial court recharged the jury with the same obstruction charge it first gave.

Collins acquiesced in the court's initial charge, and thus waived the argument on appeal. *Ayers v. State*, 251 Ga. App. 623, 626 (7), n. 9 (555 SE2d 4) (2001); *Boone v. State*, 229 Ga. App. 379, 381 (4) (494 SE2d 100) (1997). Further, the extent and character of any recharge to the jury is within the trial court's discretion, and we find no error in the trial court's decision to recharge the pattern obstruction charge with the addition it gave the first time. *Arsenault v. State*, 257 Ga. App. 456, 458 (3) (571 SE2d 456) (2002). The charge was a correct statement of the law, and as a whole, would not mislead a jury of ordinary intelligence. *Sims v. State*, 296 Ga. App. 461, 464 (3) (675 SE2d 241) (2009).

*Judgment affirmed. Blackburn and Bernes, JJ., concur.*

DECIDED MAY 7, 2010.

*Sheueli C. Wang*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.